21 CIV. 4816 (JLR) (SLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHE BENSMAINE,

                                              Plaintiff,

-against-

CITY OF NEW YORK, ET AL.,

                                              Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
    *Attorney for Defendants*
    *100 Church Street*
    *New York, N.Y.  10007*

    *Of Counsel:  Andrew B. Spears*
    *Tel:  (212) 356-3159*

**PRELIMINARY STATEMENT**

On November 15, 2022, plaintiff filed his opposition to defendants' motion for judgment on the pleadings ("Pl. Opp."). (ECF No. 123). Plaintiff's opposition is unpersuasive, for several reasons. First, plaintiff's opposition does not convincingly demonstrate how the Amended Complaint satisfies Rule 8's personal involvement requirement. Moreover, contrary to the arguments set forth in plaintiff's opposition, defendants submit that the pertinent body-worn camera (hereinafter "BWC") footage of plaintiff's arrest can and should be considered in connection with the instant motion. Consequently, because the relevant BWC footage, as well as plaintiff's 50-h testimony, establish that there probable cause or at least arguable probable cause to arrest plaintiff for disorderly conduct, his false arrest and First Amendment retaliation claims must be dismissed. Further, defendants refute plaintiff's characterizations of the alleged use of force incident, as it is directly contradicted by the evidence annexed to defendants' motion. Lastly, despite plaintiff's efforts, the Amended Complaint cannot evade dismissal on the pleadings by purporting to incorporate by reference the allegations set forth in a separate pleading.

**ARGUMENT**

**POINT I**

**THE AMENDED COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 8**

In the first instance, plaintiff's opposition argues that the Amended Complaint provided "fair notice" of plaintiff's claims to each of the individual defendants, and that in general, "mass arrest cases" "typically allow discovery before requiring plaintiffs to specify which officers participated directly . . ." (See Pl. Opp. at pp. 11–14). Plaintiff's arguments are unavailing, for several reasons.

The Amended Complaint merely lumps all of the individual defendants together, and does not specify what role, if any, each of the individual defendants played in any alleged wrongdoing. (See Defendants' Memorandum of Law In Support of the Motion for Judgment on the Pleadings ("Defs. Mem.") at p. 16). In his opposition, plaintiff emphasizes the importance of the "particular factual context of [the] case" in the personal involvement analysis, and contends that the Amended Complaint adequately alleges "that all individually named Defendants were personally involved in the arrest and abuse of [plaintiff]," despite a lack of specificity as to which defendant did what. (See Pl. Opp. at p. 12). In doing so, plaintiff relies primarily on Messina v. Mazzeo, 854 F. Supp. 116 (E.D.N.Y. 1994) and Celestin v. Angeletta, No. 19 Civ. 1887 (NSR), 2021 U.S. Dist. LEXIS 52142 (S.D.N.Y. Mar. 19, 2021) in support of the notion that it is unreasonable "to expect an arrestee to remember and plead the role each of several police officer played in an alleged instance of police [misconduct]." See Messina, 854 F. Supp. at 126; Celestin, 2021 U.S. Dist. LEXIS 52142 at *12.

Plaintiff's reliance on those decisions is misguided. Unlike the Amended Complaint, the pleadings at issue in both Messina and Celestin simply failed to specifically allege the precise role of each individual defendant in the alleged misconduct (*i.e.*, who participated in the use of force, who handcuffed the plaintiff, etc.). See generally id. Those pleadings did, however, appear to have at least identified the particular *claims* being set forth against each of the individual defendants. See id. Here, by contrast, the Amended Complaint entirely fails to allege which individual defendants are implicated in any of plaintiff's various claims. Instead, the allegations regarding plaintiff's arrest broadly refer to either "the officers," "the individual Defendants," or "Defendants" in connection with plaintiff's false arrest, First Amendment, excessive force, due process, and failure to intervene claims, and in doing so, vaguely lump

2

together both defendant officers and non-party officers. (See generally Am. Compl., Khairy Decl., Ex. A). In fact, other than defendant Inspector Hillery, the factual allegations pertaining to plaintiff's arrest do not include the name of a single individual defendant. (See id. at ¶¶ 16–47).

Importantly, defendants further note that in Celestin, the court actually *dismissed* several of the defendants on personal involvement grounds, due to, *inter alia*, plaintiff's ambiguous use of "[t]he Sergeant," which the Court determined was insufficient to "identify which of the two sergeants he named as Defendants, if either, used [excessive force]."[1] See Celestin, 2021 U.S. Dist. LEXIS 52142 at *11. The allegations set forth in the Amended Complaint are more analogous to those in Celestin that the court deemed insufficient. As with the insufficient allegations set forth in Celestin, the Amended Complaint's use of "Defendants," "officers," and/or "individual Defendants" does not allow for the identification of which officers either falsely arrested, retaliated, used excessive force, or otherwise failed to intervene in the alleged misconduct. Indeed, that the Amended Complaint "alleges that each of the additional individually named officers *either* personally tackled and falsely arrested Mr. Bensmaine *or* stood by surrounding him and failed to intervene" is precisely why it is subject to dismissal pursuant to Rule 8. (Pl. Opp. at p. 12) (emphasis added).[2]

---

[1] Notably, the plaintiff in Celestin was proceeding *pro se*, which explains why the Court "read [the Complaint] liberally" in that case. See generally Celestin, 2021 U.S. Dist. LEXIS 52142.

[2] The relevant body-worn camera footage also conclusively demonstrates that nine of the eleven individual defendants were not personally involved in plaintiff's arrest and apprehension. (See Defs. Mem. at pp. 3, 12).

3

## POINT II

### THE COURT SHOULD CONSIDER BODY-WORN CAMERA FOOTAGE IN CONNECTION WITH THE INSTANT MOTION

Plaintiff's opposition next "objects to the use of Defendants' video evidence in resolving a motion to dismiss," primarily arguing that the extrinsic BWC footage annexed to defendants' moving papers is not incorporated by reference in the Amended Complaint and therefore, cannot be considered in connection with the instant motion. (See Pl. Opp. at p. 14–15).

While the Amended Complaint does not explicitly reference the BWC footage of plaintiff's arrest, the footage is nevertheless integral to the Amended Complaint, and therefore can be considered at this stage in the litigation. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–153 (2d Cir. 2002) ("even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document integral to the complaint."); see also Hirsch v. Complex Media, Inc., No. 18 Civ. 5488 (CM), 2018 U.S. Dist. LEXIS 209701, at **6–7 (S.D.N.Y. Dec. 10, 2018) (where a video is integral to the complaint, it may be considered upon a motion to dismiss, and the "[c]ourt need not accept the party's characterizations" of it). Here, the BWC footage annexed to defendants' moving papers is integral to the Amended Complaint because it represents an irrefutable depiction of the underlying incident, and is otherwise integral to the pleadings and defendants' affirmative defenses. See Towner v. Town of Cohocton, No. 19 Civ. 6638 (CJS), 2021 U.S. Dist. LEXIS 93520, at *5 (W.D.N.Y. May 17, 2021) (finding that a video was integral to a plaintiff's pleading, "since it captures the very event for which plaintiff was arrested and prosecuted"). Accordingly, it is appropriate to consider the BWC footage at this stage.

Nevertheless, even if the Court is reluctant to consider BWC footage on a 12(c) motion, defendants respectfully request that the Court convert the instant motion into one for summary judgment, so that these materials may be properly considered. In arguing against potential conversion pursuant to Rule 12(d), plaintiff emphasizes that the parties are in the early stage of discovery, and claims that defendants "have not even produced the most basic discovery and have cherry-picked incomplete and unreliable BWC footage," and are "withholding relevant and necessary footage." (Pl. Opp. at p. 15). Plaintiff is incorrect. Defendants have already produced to plaintiff, *inter alia*, nineteen body-worn camera videos, including all available, relevant body-worn camera footage from the individual defendants on May 30, 2020, as well as relevant footage from non-party officers. To the extent that defendants have not produced BWC footage for some of the individual defendants, that is because, upon information and belief, no such relevant footage exists. Plaintiff's contentions that defendants are deliberately withholding certain footage is entirely baseless, and it is unclear how plaintiff can credibly make such a representation to the Court. Moreover, that some of the footage provided does not depict plaintiff's arrest is merely evidence that certain individual defendants were not personally involved in the alleged incident. (See generally BWC, Khairy Decl., Exs. G, H, I, and J). In fact, BWC footage from non-party officer Peter Sotiriou conclusively demonstrates that a total of four officers were involved in plaintiff's arrest, *only two of whom are among the <u>eleven</u> individual defendants named in this matter*. (See Sotiriou BWC, Khairy Decl., Ex. F, at 21:28:52).[3] In light of the foregoing, additional discovery and fact-finding—particularly as it pertains to the personal involvement of nine of the eleven individual defendants—is unnecessary, and conversion is appropriate at this

---

[3] Defendants further note that while this video, as well as other relevant BWC footage (see Khairy Decl., Exs. C, E), is "timestamped" several hours after plaintiff's arrest, these videos nevertheless plainly depict plaintiff's arrest. Therefore, plaintiff's apparent concerns over the "submissions with time stamps hours after the arrest and violence took place" (see Pl. Opp. at p. 15) are entirely unfounded.

juncture, if the Court is not inclined to consider the footage in connection with defendants' motion for judgment on the pleadings.

## POINT III
## THERE WAS PROBABLE CAUSE FOR PLAINTIFF'S ARREST

Plaintiff's opposition further argues that his false arrest claim should not be dismissed because "nothing in the Complaint alleges that Mr. Bensmaine was actually and immediately blocking pedestrian or vehicular traffic sufficiently to give rise to probable cause" to arrest him for disorderly conduct. (Pl. Opp. at p. 19). However, the BWC footage annexed to defendants' moving papers clearly shows plaintiff walking in the street taking photos and otherwise participating in the large scale protest, all while NYPD was repeatedly ordering the hundreds of protestors in the vicinity to get off the streets and move to the sidewalk because they were blocking vehicular traffic. (See Vega BWC, Khairy Decl., Ex. C). As such, there can be no question that there was probable cause to arrest plaintiff for disorderly conduct.

Nevertheless, even absent consideration of the relevant BWC footage, plaintiff's own testimony from his 50-h hearing confirms that he "wasn't at the cross road" and that he understood the NYPD Long Range Acoustic Device ("LRAD") warnings to be ordering the protestors to move to the sidewalk.[4] (See Pl. 50-h Tr., Khairy Decl., Ex. D at 10:8–11:9). Accordingly, defendants possessed at least arguable probable cause to arrest plaintiff for disorderly conduct. See Monahan v. City of New York, No. 20 Civ. 2610 (PKC), 2022 U.S. Dist. LEXIS 59124, at *17 (S.D.N.Y. Mar. 30, 2022) ("As to section 240.20(6), 'the gravamen of the offense in that case is not so much the conduct of the defendant as it is the refusal to desist from that conduct after being ordered to by the police.'") (quoting People v. Carcel, 3 N.Y.2d 327, 331

---

[4] Unlike the BWC footage annexed to defendants' moving papers, plaintiff does not appear to contest that plaintiff's 50-h transcript can be considered in connection with the instant motion.

(1957)); see also Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (arresting officer entitled to qualified immunity if he can establish that there was arguable probable cause to arrest). Further, because there was probable cause to arrest plaintiff, his First Amendment retaliation claim must also be dismissed. Meyers v. City of New York, 812 Fed. Appx. 11, 15 (2d Cir. 2020) (["t]he existence of probable cause defeats a First Amendment claim premised on the allegation that defendants arrested a plaintiff based on a retaliatory motive.") (internal quotations omitted).

## POINT IV
## PLAINTIFF WAS NOT SUBJECTED TO EXCESSIVE FORCE

Plaintiff's opposition contends that the Amended Complaint "properly ple[ads] excessive use of force under the relevant standard," and otherwise argues that the BWC footage annexed to defendants' moving papers "reflects what Mr. Bensmaine's complaint asserts." (See Pl. Opp. at pp. 19–21). Defendants refute plaintiff's characterization of the relevant BWC footage, and reiterate that the footage conclusively demonstrates that: (a) nine of the eleven individual defendants were not personally involved in plaintiff's arrest and apprehension; and (b) plaintiff was inadvertently knocked over while officers were attempting to arrest a different individual, which does not give rise to a viable excessive force claim. (See Vega BWC, Khairy Decl., Ex. C, at 21:28:00). Defendants also refute plaintiff's assertion that the BWC footage demonstrates that "multiple people on the sidewalk were begging the police to intervene and help, yelling that they were 'gonna kill [plaintiff]' . . . and crying in anguish things like 'Help that guy!' 'Be a human! Help him!' and 'He is being brutalized!!!'" (See Pl. Opp. at pp. 20–21 (citing Cirikovic BWC, Khairy Decl., Ex. G at 21:28:26; Mosquera BWC, Khairy Decl., Ex. I at 21:28:26)). Indeed, upon review of the footage, it is entirely unclear whether these statements were directed at the officers involved in plaintiff's apprehension, or one of the other protestors being apprehended. (See id.).

7

In any event, defendants underscore that the Court need not consider the party's characterizations of the relevant footage, as the footage itself "supersedes and control[s] contrary descriptions of it contained in the pleadings or elsewhere." Hirsch, 2018 U.S. Dist. LEXIS 209701 at **6–7 (internal quotations omitted).

Further, as to plaintiff's tight-handcuffing claim, plaintiff explicitly testified that officers loosened his handcuffs after he complained of pain. (See Pl. 50-h Tr., annexed to the Declaration of Andrew B. Spears in Further Support of Defendants' Motion for Judgment on the Pleadings as Exhibit D-2, at 21:19–22:9).[5] Moreover, despite being allegedly "tackled by at least five police officers, shoved into the pavement until he was bruised and bleeding, and *brutalized with the police baton*" (Pl. Opp. at p. 20) (emphasis added), plaintiff also testified that he **never** sought medical attention for any purported injuries stemming from this incident. (See Pl. 50-h Tr., Khairy Decl., Ex. D at 25:23–26:2; 27:8–27:10; 28:18–28:21).[6]

### POINT V
### THE AMENDED COMPLAINT CANNOT PLEAD A VALID MONELL CLAIM THROUGH INCORPORATION BY REFERENCE

Lastly, plaintiff's opposition contends that a Monell claim is adequately pleaded because the Amended Complaint incorporates by reference the well-pleaded allegations set forth

---

[5] The undersigned notes that page "22" of plaintiff's 50-h transcript appears to have been inadvertently omitted from the transcript initially annexed to defendants' motion as Exhibit D (see Khairy Decl., Ex. D). As such, it is being submitted herewith, in connection with defendants' reply papers. Page "21" has also been reproduced herewith, for completeness.

[6] Defendants concede that plaintiff's excessive force claim will survive in the event that this Court both: (a) declines to dismiss the Amended Complaint pursuant to Rule 8; and (b) declines to consider the extrinsic evidence annexed to defendants' moving papers.

8

in "the Attorney General's complaint in the related consolidated action '*In re New York City Policing During Summer 2020*" 21-CV-00322 (CM)'" (hereinafter, the "AGC").[7]

Plaintiff's argument should be rejected, because plaintiff cannot attempt to bolster the factual plausibility of his otherwise insufficient Monell claim by incorporating by reference—and in effect, substituting—the allegations of a different, well-pleaded complaint. It is well-established that "[a] court may take judicial notice of a document filed in another court *not for the truth of the matters asserted in the other litigation*, but rather to establish the fact of such litigation and related filings." Global Network Commc'ns., Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (emphasis added); see also Lateral Recovery, LLC v. Cap. Merch. Servs., LLC, No. 21 Civ. 9336 (LJL), 2022 U.S. Dist. LEXIS 181044, at *65 (S.D.N.Y. Sept. 30, 2022) ("[w]hen a court takes judicial notice of a document on a motion to dismiss, it should generally do so only to determine what statements the documents contain not for the truth of the matters asserted.") (internal quotations omitted); Oakley v. Dolan, No. 17 Civ. 6903 (RN), 2020 U.S. Dist. LEXIS 28267, at *15 (S.D.N.Y. Feb. 19, 2020) (citing Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) (internal quotations omitted).

Here, plaintiff argues that the Amended Complaint incorporates the AGC by reference, evidently because the AGC was found to plausibly allege that "the City has a de facto custom or policy allowing and condoning mass false arrests, excessive force, and retaliation for the exercise of First Amendment rights at protests." (Pl. Opp. at p. 17). As an initial matter, plaintiff's opposition does not cite to any case law in support of his attempt to incorporate an entire separate pleading by reference, and indeed, defendants are not aware of any such precedent. Consequently, the Court should not accept plaintiff's attempted evasion of Rule 8's pleading

---

[7] Defendants note, as they have on numerous other occasions, that the instant matter has not been deemed as related to the consolidated protest cases.

9

requirements.  Indeed, doing so would create a tenuous example whereby prospective plaintiffs could satisfy their pleading obligations by merely attaching a separate, well-pleaded complaint involving similar factual allegations to their own pleading, and purporting to incorporate it by reference.

Moreover, as a practical matter, the AGC contains hundreds of factual allegations that are wholly unrelated to plaintiff's Monell claim in this case. (See generally AGC, annexed to the Declaration of Sujata S. Gibson (ECF No. 124) as Exhibit 1). In fact, the AGC does not even advance a municipal liability claim, and "seeks solely declaratory and injunctive relief." (See generally id.). Moreover, the AGC does not appear to even reference the specific protest that plaintiff attended on May 30, 2020. (Id.). For those reasons, this Court should not consider the AGC in analyzing the plausibility of the Monell claim alleged in plaintiff's Amended Complaint.

## CONCLUSION

For all of the foregoing reasons, and for the reasons outlined in defendants' initial memorandum, the Court should dismiss the claims asserted against defendants in plaintiff's Amended Complaint in their entirety, with prejudice, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
       December 15, 2022

                                              **HON. SYLVIA O. HINDS-RADIX**
                                              Corporation Counsel
                                              of the City of New York
                                              *Attorney for Defendants*
                                              100 Church Street
                                              New York, New York 10007
                                              (212) 356-3159

                                              Respectfully submitted,

                                              *Andrew B. Spears*       /s
                                              Andrew B. Spears
                                              *Assistant Corporation Counsel*
                                              Special Federal Litigation Division

cc:    **VIA ECF**
        Sujata S. Gibson, Esq.
        Remy Green, Esq.
        Gideon O. Oliver, Esq.
        *Attorneys for plaintiff Christophe Bensmaine*